UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN IRIEL,

    Plaintiff,

v.                                                                Hon. Sally J. Berens

COMMISSIONER OF                                Case No. 1:23-cv-311
SOCIAL SECURITY,

    Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence and in accordance with the law it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks judicial review of this decision.

For the following reasons, the Court will **affirm** the Commissioner's decision.

## Standard of Review

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Fact finding is the Commissioner's province, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In applying this standard, a court must consider the evidence as a whole, while accounting for any evidence that fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard contemplates a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords the administrative decision maker considerable latitude and precludes reversal simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**Procedural Posture**

Plaintiff filed an application for DIB on June 1, 2020, alleging that he became disabled as of April 15, 2016, due to bipolar disorder 2 and depression, a 2017 bariatric surgery, and difficulty standing for long periods of time due to his weight. (PageID.75, 254–55.) Plaintiff was age 41 at the time of his alleged onset date and age 45 at the time he filed his application. (PageID.75.) He had completed the eleventh grade and had past work as a restaurant cashier and cook, a delivery driver, and a retail sales associate. (PageID.288.) Plaintiff's application was

denied initially and on reconsideration, and he requested a hearing before an Administrative Law Judge (ALJ).

ALJ Lawrence E. Blatnik conducted an online video hearing on July 20, 2021, and received testimony from Plaintiff and Sherry Ronning, an impartial vocational expert (VE). (PageID.42–73.) During the hearing, Plaintiff amended his alleged onset date to January 28, 2020. (PageID.47.) On January 6, 2022, the ALJ issued a written decision finding that Plaintiff was not disabled from his alleged onset date through the date of the decision. (PageID.20–31.) The Appeals Council denied Plaintiff's request for review on January 27, 2023 (PageID.11–13), making ALJ Blatnik's January 6, 2022 decision the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007).

Plaintiff initiated this action for judicial review on March 27, 2023.

**Analysis of the ALJ's Opinion**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his RFC is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

After finding that Plaintiff met the insured status requirements of the Act through June 30, 2023, and had not engaged in substantial gainful activity since his amended alleged onset date of January 28, 2020, the ALJ found that Plaintiff suffered from severe impairments of diabetes mellitus, obstructive sleep apnea (OSA), hypertension, obesity, depression, and bipolar disorder. (PageID.23.)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (*Id.*) With regard to mental impairment-related listings 12.04 (depressive, bipolar, and related disorders) and 12.11

---

capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

(neurodevelopment disorders), the ALJ considered the "paragraph B" factors, concluding that Plaintiff was mildly limited in the areas of functioning of understanding, remembering, or applying information and moderately limited in the areas of functioning of interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (PageID.24.)

The ALJ then determined that Plaintiff retained the capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> He can lift or carry 20 pounds occasionally and ten pounds frequently. The claimant can sit, stand and walk all for at least six hours of an eight-hour workday. He can never climb ladders and scaffolds, and can occasionally balance, kneel, stoop, crouch, and crawl. He can occasionally climb ramps and stairs. The claimant must avoid all exposure to unprotected heights and moving mechanical parts, and must avoid concentrated exposure to fumes, odors, dusts, gases and respiratory irritants. The claimant can perform simple, routine, repetitive tasks, and can make simple work-related decisions. The claimant can perform work that involves occasional contact or interaction with the public, co-workers, and supervisors.

(PageID.25.)

At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work as a cashier (PageID.29–30), at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy that Plaintiff could perform. *See Richardson*, 735 F.2d at 964. Based on testimony from the VE, the ALJ found that an individual of Plaintiff's age, education, work experience, and RFC could perform the jobs of inspector-hand packager, laundry sorter, and small products assembler, approximately 445,000 of which existed in the national economy. (PageID.30.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (noting that "[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). The ALJ thus

concluded that Plaintiff had not been disabled from his amended alleged onset date through the date of the decision.

## Discussion

Plaintiff raises two errors on appeal, one of which presents three sub-issues: (1) the ALJ's refusal to call the post-hearing consultative examiner for a supplemental hearing deprived Plaintiff of his right to due process and is contrary to the applicable regulations; and (2) the ALJ's RFC findings are not supported by substantial evidence because: (a) the ALJ's finding that the opinion of Plaintiff's treating physician was not persuasive is not supported by substantial evidence; (b) the ALJ failed to address the differences between the medical source statements, which was not harmless error where he adopted some opinions without explaining his rationale; and (c) the RFC determination failed to consider the effects of Plaintiff's sleep disturbances, excessive sleep, and/or hypersomnolence disorder as required by law. (ECF No. 6 at PageID.1297.)

**I.  Due Process Violation**

At the conclusion of the July 20, 2021 hearing, the ALJ indicated his intention to arrange a psychological consultative examination of Plaintiff. (PageID.72.) Timothy Strang, Ph.D., conducted the examination on August 11, 2021, and issued his report on August 18, 2021. (PageID.1253–60.) Thereafter, the ALJ proffered Dr. Strang's report to Plaintiff's counsel, indicating his intent to enter it into the record. The ALJ also advised counsel as follows:

> You may submit any or all of the following: written comments concerning the evidence, a written statement as to the facts and law you believe apply to the case in light of that evidence, and any additional records you wish me to consider (including a report from the treating physician). You may also submit written questions for the author(s) of the new evidence. If you do so, I will consider whether they need to be completed.

> You may also request a supplemental hearing. If you request a supplemental hearing, I will grant the request unless I decide to issue a fully favorable decision. If a supplemental hearing is scheduled, the claimant may testify, produce witnesses, and, subject to the provisions of 20 CFR 404.935, 404.949, 416.1435, and 416.1449, submit additional evidence and written statements. In addition, you may request an opportunity to question witnesses, including the author(s) of the new evidence. I will grant a request to question a witness if I determine that questioning the witness is needed to inquire fully into the issues. If a witness declines a request by me to appear voluntarily for questioning, I will consider whether to issue a subpoena to require his or her appearance.
>
> You may request that I issue a subpoena to require the attendance of witnesses or the submission of records. . . .

(PageID.386.) Plaintiff's counsel requested a supplemental hearing for the sole purpose of cross-examining Dr. Strang if the ALJ was not going to issue a fully favorable decision. Counsel asserted that the ALJ should give the report "very little weight" due to: (1) Dr. Strang's limited contact with Plaintiff and his lack of access to records from Plaintiff's treating provider, Brielle McDougall, PA-C, and Oaklawn Psychological Services; (2) inconsistencies among Dr. Strang's findings and those of Ms. McDougall and the state agency consultants; and (3) Dr. Strang's failure to address what, if any, limitation Plaintiff would experience as a result of his diagnosis of Hypersomnolence Disorder or excessive daytime fatigue. Counsel concluded by requesting that, if the ALJ was not going to issue a fully favorable decision, he issue a subpoena for Dr. Strang to testify at a supplemental hearing. (PageID.389–90.) The ALJ did not respond to counsel's request to cross-examine Dr. Strang, but he scheduled a supplemental hearing. Plaintiff's counsel subsequently requested that the ALJ cancel the hearing after he learned from someone in the ALJ's office that Dr. Strang would not appear at the supplemental hearing because the ALJ had found no precedent for taking testimony from a consultative examiner and that the ALJ had no other purpose for the hearing. (PageID.241–42.) The ALJ evaluated Dr. Strang's opinion in his decision as follows:

7

> Tim Strang, Ph.D., an examining psychological consultant opined the claimant had mostly mild mental functional limitations with "moderate" limitations in adaptation and stress tolerance (August 2021, 22F). I find Dr. Strang is an acceptable source for mental work capacity assessments. I find this opinion partially persuasive. Specifically, the term "moderate," does not equate with any specific quantity of basic mental work activity. However, it does indicate some degree of capacity versus limitation. The evidence shows that the claimant has reported having difficulty coping with stress. However, on examination, the claimant was able to pay attention, understand, and remember simple information. He reported being able to concentrate well enough to play video games, assemble Legos, use a riding lawnmower, and operate a motor vehicle (hearing testimony; 4E-6E, 9E).

(PageID.29.)

Plaintiff contends that the ALJ violated his right to due process by refusing to allow him to cross-examine Dr. Strang at a supplemental hearing. It is well established that due process requires that a social security hearing be "full and fair." *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401–02 (1971)). "[B]oth the Social Security Act and basic principles of due process require that a claimant receive meaningful notice and an opportunity to be heard before his claim for disability benefits can be denied." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 488 (6th Cir. 2006) (internal quotation marks omitted). When an ALJ considers post-hearing evidence, "the claimant must be given an opportunity to review the evidence and, if desired, an opportunity to cross-examine the author[], or to rebut such a report." *Watkins v. Sec'y of Health & Human Servs.*, No. 93-1363, 1993 WL 393075, at *1 (6th Cir. Oct. 4, 1993). A claimant's right to cross-examine the author of a post-hearing report is not absolute. *Flatford*, 93 F.3d at 1305–06. Rather, due process affords a claimant a right of cross-examination "where reasonably necessary to the full development of the case." *Id.* at 1307. The *Flatford* court observed that, because social security adjudications are nonadversarial in nature, "the need to cross-examine every reporting physician is less crucial to the fairness and accuracy of the administrative law judge's decision than it would be in an

8

adversarial context." *Id.* at 1306. Thus, interrogatories to medical examiners may "provide a meaningful opportunity for a disability claimant to confront the evidence he believes to be adverse to his claim." *Id.*

Plaintiff contends that in denying his request to cross-examine Dr. Strang at a hearing, the ALJ failed to comply with several provisions of the Hearings, Appeals, and Litigation Law Manual (HALLEX), including HALLEX I-2-7-30, outlining proffer procedures, and I-2-5-78, governing use of subpoenas. "[W]hile the HALLEX procedures are binding on the Social Security Administration, they are not binding on courts reviewing the administration's proceedings." *Dukes v. Comm'r of Soc. Sec.*, No. 1:10-cv-436, 2011 WL 4374557, at *9 (W.D. Mich. Sept. 19, 2011) (citing *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008)). "HALLEX does not impose judicially enforceable duties on either the ALJ or this Court." *Blain v. Comm'r of Soc. Sec.*, No. 1:17-cv-844, 2018 WL 4178200, at *3 (W.D. Mich. Aug. 15, 2018) (internal quotation marks and brackets omitted), *report and recommendation adopted*, 2018 WL 4150170 (W.D. Mich. Aug. 30, 2018).

The ALJ's basis for not considering counsel's request to cross-examine Dr. Strang at a supplemental hearing—the lack of precedent for taking testimony from a consultative examiner—was erroneous to the extent the ALJ believed he lacked authority to compel Dr. Strang's attendance at a hearing. HALLEX I-2-7-30 specifically provides that the ALJ will evaluate a claimant's request to question the author of a post-hearing report to determine "whether questioning the author is necessary to inquire fully into the matters at issue," and if so, "whether to conduct the questioning through live testimony or written interrogatories." HALLEX I-2-7-30 § C.1. Had the ALJ determined that live testimony was necessary and that Dr. Strang would not voluntarily attend, he could have issued a subpoena to compel Dr. Strang's

9

attendance, as set forth in HALLEX I-2-5-78. In addition, the Social Security Administration's Program Operations Manual Systems (POMS) specifically allows ALJs to request testimony from a consulting physician at a hearing and to subpoena the consultant if he or she will not voluntarily appear.[2] POMS DI 29501.030(A). The ALJ's belief that "Dr. Strang could not be required to attend the hearing for the purpose of cross-examination" (PageID.20), amounts to an abuse of discretion because it resulted from his failure to recognize and exercise the discretion he had been granted. *See Dolin v. GlaxoSmithKline LLC*, 951 F.3d 882, 889 (7th Cir. 2020) ("[W]here the law gives a court discretion that the court does not recognize and exercise, [t]he failure of the trial court to exercise its discretion at all . . . constitutes an abuse of discretion.") (internal quotation marks omitted); SSR 13-1p, 2013 WL 633939, at *3 (Jan. 29, 2013) ("We will find an abuse of discretion when an ALJ's action is erroneous and without any rational basis, or is clearly not justified under the particular circumstances of the case, such as where there has been an improper exercise, or a failure to exercise, administrative authority.").

Nonetheless, a HALLEX violation, alone, does not give rise to a due process violation. *See Dukes*, 2011 WL 4374557, at *9 (stating that "the agency procedures set forth in HALLEX, in and of themselves, do not create federal due process rights for claimants"). In accordance with HALLEX I-2-7-1 § A, the ALJ provided Dr. Strang's report to Plaintiff's counsel and notified him that Plaintiff had the right to comment on, object to, or refute the report by submitting other evidence and to submit a written statement as to the facts and law that he believed apply to the case in light of Dr. Strang's report. (PageID.386.) In response, counsel provided his reasons why the ALJ should give the report "very little weight." (PageID.389.) The ALJ also informed

---

[2] "[T]he POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims." *Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989). While the POMS "does not have the force and effect of law, it is nevertheless persuasive." *Id.*

Plaintiff's counsel that he could submit interrogatories for Dr. Strang, and the ALJ would consider whether Dr. Strang needed to complete them. (*Id.*) Although the ALJ denied Plaintiff's request for live testimony, counsel never submitted interrogatories for the ALJ to consider. As in *Blain*, above, "[t]he ALJ never left plaintiff's attorney without a method to address Dr. Strang's findings," because "[n]othing during the course of administrative proceedings prevented plaintiff's attorney from submitting written interrogatories." 2018 WL 4178200, at *4.

These circumstances are also similar to those in *Chandler v. Commissioner of Social Security*, 124 F. App'x 355, 359 (6th Cir. 2005), in which the Sixth Circuit found no due process violation because, although the ALJ did not afford the plaintiff the opportunity to cross-examine a medical expert, counsel failed to take advantage of his opportunity to submit interrogatories. Plaintiff's argument that *Chandler* is distinguishable because the hearing the ALJ had scheduled would have rendered interrogatories superfluous (ECF No. 8 at PageID.1348) is unpersuasive, as Plaintiff fails to explain why counsel could not have requested an opportunity to submit interrogatories once he learned that Dr. Strang would not appear at the hearing. Thus, Plaintiff fails to demonstrate that he was denied a full and fair opportunity to be heard.

Even if Plaintiff had established a violation of HALLEX or his due process rights, remand would not be warranted because he fails to make the required showing of prejudice. *See Creech v. Comm'r of Soc. Sec.*, 581 F. App'x 519, 521 (6th Cir. 2014) ("[D]istrict courts that have granted relief for failure to comply with HALLEX have required that the plaintiff demonstrate prejudice from the failure to follow the procedures."); *see also Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) ("[A]bsent unfairness or prejudice, we will not remand."); *Dunham v. Colvin*, No. 1:16-cv-33, 2016 WL 7048691, at *6 (D. Me. Dec. 5, 2016), *report and recommendation adopted*, 2017 WL 27934 (D. Me. Jan. 3, 2017) ("[E]ven assuming that the

11

plaintiff had shown a violation of the HALLEX or of due process, he fails to make the showing of prejudice necessary to warrant reversal and remand"). As set forth above, the ALJ found Dr. Strang's opinion persuasive only as to his finding that Plaintiff was moderately limited in adaptation and stress tolerance, which the ALJ interpreted as retaining some degree of capacity versus limitation. (PageID.29.) The State psychological consultants made similar findings in these areas. (PageID.86–87, 110–11.) Otherwise, the ALJ included additional limitations in his RFC determination consistent with those opined by the State psychological consultants but not by Dr. Strang. (PageID.25, 28.) Moreover, contrary to Plaintiff's argument, the ALJ adopted the State psychological consultants' findings over those of Dr. Strang, and fully explained his reasons for doing so. (PageID.28.) In short, Plaintiff fails to offer any persuasive basis to conclude that he was prejudiced by not being able to question Dr. Strang through live testimony. *See Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 404–05 (6th Cir. 2016) (holding that the ALJ did not abuse his discretion in failing to subpoena a consultative psychological examiner to testify as the ALJ did not substantially rely on the psychologist's report and the request for cross-examination was merely to ask questions that would bolster her case).

**II.     RFC Determination**

A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014); *see also* Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). "An RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner." *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017). In determining a claimant's RFC,

12

the ALJ considers medical source statements and all other evidence of record. 20 C.F.R. § 404.1545(a)(3).

### A.  Opinion Evidence

The ALJ evaluated the opinion evidence pursuant to 20 C.F.R. § 404.1520c. Under that regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. § 404.1520c(a). Instead, an ALJ will articulate his or her determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 404.1520c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c)(1)–(5). In general, the ALJ must explain his or her consideration of the supportability and consistency factors, but is not required to explain how the remaining factors were considered. 20 C.F.R. § 404.l520c(b)(2) and (3). The regulation explains "supportability" and "consistency" as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)–(2) and 416.920c(c)(1)–2.

1. **Opinion of Brielle McDougall, PA-C**

Plaintiff's treating provider, Brielle McDougall, PA-C, completed a mental impairment questionnaire on June 13, 2021. While many of her opined limitations were consistent with the ALJ's findings, others were not. The ALJ evaluated this opinion as follows:

> *Brielle McDougall, PA-C*, a direct mental health care provider who saw the claimant every few months for about a year for medication reviews, opined the claimant had "marked" limitations in concentration and persistence due to daytime sleepiness and fatigue. Ms. McDougall indicated that the claimant was unable to perform simple routine tasks and would be unable to attend, i.e. would be "off task" for 20 percent of the workday due to stress intolerance. Ms. McDougall opined that the claimant was unable to make simple decisions for 40 percent of the time. Ms. McDougall indicated the claimant would be expected to miss more than four days of work each month due to his impairments that included a bipolar disorder and sleep apnea (July 2021, 19F, 20F). I find Ms. McDougall is an acceptable source for mental work capacity assessments. However, I am not persuaded by these assessments because the mental limitations advocated by Ms. McDougall appeared excessive and overstated, and are not well supported by the relevant treatment records or the other record evidence that shows the claimant is not limited to the degree described. For example, the evidence shows that the claimant is able to live independently, use a riding lawnmower, and operate a motor vehicle (hearing testimony; 3E, 9E, 12F). The degree of limitation indicated by Ms. McDougall is not consistent with her own examination results. For example, in December 2020, Ms. McDougall noted that the claimant's function had improved with care. The claimant reported that he had good mood stability, i.e. not having mood swings, to Ms. McDougall. The claimant told Ms. McDougall that he was "content and happy," and was not depressed, irritable, or suicidal. Ms. McDougall observed that the claimant was well groomed, clean and neat. Ms. McDougall also observed that the claimant was oriented to situation, time, place, and person. He was friendly, cooperative, calm and alert. His eye contact was normal, and his memory was intact. His attention, concentration, insight, judgment, and thought processes were normal (11F:4). Ms. McDougall's observations were generally consistent with what was reported by the examining psychological consultant, Tim Strang, Ph.D., discussed below.

(PageID.28–29.)

The ALJ complied with 20 C.F.R. § 1520c(b)(1) by articulating his consideration of the supportability and consistency factors. Plaintiff contends, however, that his findings are not supported by substantial evidence because they fail to consider the longitudinal record. (ECF No.

6 at PageID.1313.) More specifically, Plaintiff asserts that the ALJ's focus on a single treatment record from December 2020 indicating, among other things, that his overall functioning had improved, and he was "content and happy" ignores subsequent medical records documenting a voluntary hospitalization in February 2021 and his continuing struggles with excessive sleep, anxiety, and lack of energy through September 2021. (*Id.* at PageID.1315.) Plaintiff is correct that his reported mental functioning in December 2020 is not reflective of his symptoms reported in subsequent treatment notes. (*See, e.g.*, PageID.1190, 1193, 1249.) But the December 2020 note, which the ALJ cited only as an example of Ms. McDougall's examination results that were inconsistent with the degree of limitation she opined, also reflects a normal mental status examination. (PageID.29.) The subsequent treatment notes Plaintiff cites, reporting a grossly normal mental status, are no different. (PageID.1249, 1191.) In his preceding discussion of the medical record, the ALJ also cited Ms. McDougall's treatment notes from January 28, 2020, and March 2020, which also reflected a normal mental status, including that Plaintiff was cooperative, understood questions and recall information, was alert, oriented, and had normal attention and concentration. (PageID.27, 678, 683.) The ALJ also cited Plaintiff's February 2021 hospitalization, noting the absence of any indication that Plaintiff had overslept or experienced "fits of rage" during his stay and that his mental status examination on discharge was grossly normal. (PageID.27, 1103–05.) The ALJ thus did not ignore Plaintiff's record of treatment after December 2020. Moreover, contrary to Plaintiff's argument, the ALJ did not ignore the effects of Plaintiff's hypersomnolence, or excessive sleepiness, as he acknowledged Plaintiff's reports of feeling tired most of the time, being angry and irritated, and experiencing difficulty in initiating and completing tasks in assessing moderate limitations in interacting with others and concentrating, persisting, or maintaining pace in his paragraph B findings. (PageID.24.)

Although these findings do not appear in the paragraph discussing Ms. McDougall's opinion, it is well established that an ALJ's decision must be read as a whole.[3] *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (noting that the ALJ's entire decision must be considered); *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012) ("So long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review"). Reading the ALJ's discussion of the opinion in the context of the decision as a whole, the Court concludes that the ALJ sufficiently articulated his reasons for finding Ms. McDougall's opined limitations unpersuasive. Even if the evidence Plaintiff cites could also support another conclusion, the ALJ's decision must stand because the evidence reasonably supports the conclusions he reached. *See Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 177–78 (6th Cir. 2009); *Buxton v. Halter*, 246 F.3d 762, 772–73 (6th Cir. 2001).

### 2. **Differences among Opinions**

Plaintiff next asserts that because the opinions of Dr. Strang, Ms. McDougall, and the Stage agency consultants were equally persuasive, the ALJ erred by failing to comply with 20 C.F.R. § 404.1520c(b)(3), and SSR 96-8p. Section 404.1520c(b)(3) provides that when an ALJ finds that two or more conflicting medical opinions or prior administrative medical findings are equally supported and equally consistent with the record as a whole, the ALJ must articulate how he or she considered the remaining factors set forth in Section 404.1520c(c). Under SSR 96-9p, when an RFC assessment conflicts with a medical source opinion, the ALJ must explain why the opinion was not adopted. 1996 WL 374184, at *7 (July 2, 1996).

---

[3] As for the ALJ's reference to Dr. Strang's mental status findings, Plaintiff notes that Dr. Strang did not have her treatment records (ECF No. 6 at PageID.1339), but he fails to explain how the absence of those records impaired Dr. Strang's ability to observe Plaintiff's mental status.

This argument lacks merit. The ALJ found State agency consultants Drs. Greaves's and Starrett's opinion that Plaintiff could perform simple, routine tasks persuasive, while he found Dr. Strang's opinion only partially persuasive and Ms. McDougall's opinion unpersuasive. In this situation, Section 404.1520c(b)(3) did not apply because the ALJ did not find the opinions equally persuasive. *See Stilson v. Comm'r of Soc. Sec.*, No. 5:21-cv-12330, 2022 WL 18399623, at *12 n.2 (E.D. Mich. July 19, 2022) ("Because the ALJ found that Dr. Pope's opinions were less persuasive than the state consultants, he need not have articulated how he considered any factors beyond consistency and supportability."). Likewise, the ALJ fully complied with SSR 96-8p by explaining why he did not adopt any opined limitations that were inconsistent with his RFC finding.

Relatedly, Plaintiff contends that the ALJ failed to explain why he did not adopt any limitations in Plaintiff's ability to adapt or manage himself, as opined by Drs. Greaves and Starrett. But the ALJ did adopt such limitations. The consultants found that Plaintiff had adaptation limitations in that he was moderately limited in his abilities to respond appropriately to changes in the workplace and to set realistic goals or make plans independently of others. (PageID.86–87, 111.) These findings comported with Dr. Strang's opinion that Plaintiff was moderately limited in his ability to respond appropriately to usual work situations and to changes in a routine work setting. (PageID.1259.) The doctors translated this moderate limitation into an RFC restriction to simple, repetitive work activities (PageID.87, 112), which the ALJ incorporated into his RFC finding. (PageID.25.) This limitation adequately accounted for Plaintiff's moderate limitations in responding appropriately to changes in the workplace and setting goals or making plans independently of others because the specified work was routine, i.e., involving minimal changes, and would not require goal setting or planning.

17

### B.     Additional Limitations

Finally, Plaintiff contends that the ALJ erred in formulating his RFC because his decision omits any discussion of Plaintiff's sleep disturbances, excessive sleep, and/or hypersomnolence disorder. He notes that these conditions would have prevented him from maintaining concentration, persistence, and pace, and his inability to take naps as needed would cause anxiety. Plaintiff asserts that a limitation to simple, unskilled work would not address his issues with persistence, pace, or attendance. (ECF No. 6 at PageID.1318.)

Contrary to Plaintiff's assertion, the ALJ discussed Plaintiff's reports of daytime tiredness and fatigue in both his Step III findings and RFC discussion. As noted above, in the former, the ALJ described Plaintiff's complaints that he felt tired most of the time and had difficulty initiating and completing tasks, but observed that Plaintiff also reported being able to watch television and play video games for about six hours per day and reported being able to maintain concentration while driving a vehicle. The ALJ further noted that Plaintiff's providers, including Ms. McDougall, observed during visits that he was alert, could maintain eye contact, and was oriented with no focal deficits. (PageID.24 (citing PageID.976, 1031, and 1049).) Similarly, in discussing Plaintiff's sleep apnea, the ALJ recognized Plaintiff's report of being tired during the day, but again noted that his providers found him usually alert, attentive, and oriented during visits. (PageID.26 (citing PageID.1053, 1074, and 1111).) The ALJ accommodated these limitations by restricting Plaintiff to work involving simple, routine, and repetitive tasks involving simple work-related decisions, no use of ladders or scaffolds, and no work at unprotected heights or around moving machinery. (PageID.25–26.)

Here, the ALJ properly accounted Plaintiff's mental limitations in his RFC finding, and his decision that additional limitations were not warranted was supported by substantial evidence. *See Johnson v. Comm'r of Soc. Sec.*, No. 1:19-cv-1024, 2021 WL 1085006, at *3, 5–6

18

(W.D. Mich. Mar. 22, 2021) (limitation to "simple, routine and repetitive tasks" and "simple work-related decisions with normal break[s]" properly accounted for the plaintiff's moderate mental limitations). Accordingly, this claim of error is denied.

## Conclusion

For the reasons stated above, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

An order consistent with this opinion will enter.

Dated: September 29, 2023                             /s/ Sally J. Berens
                                                      SALLY J. BERENS
                                                      U.S. Magistrate Judge